UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAWN M. WENDEL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) CAUSE NO. 1:15-cv-1241-WTL-DML |
| | ) |
| INDIANA MASONIC HOME, INC., | ) |
| INDIANA MASONIC HOME, INC. | ) |
| BOARD OF DIRECTORS, and | ) |
| RODNEY MANN, | ) |
| | ) |
| **Defendants.** | ) |

## ENTRY ON DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY TO STRIKE, PLAINTIFF'S CLAIMS AGAINST BOARD OF DIRECTORS AND ITS INDIVIDUAL MEMBERS AND ON DAWN M. WENDEL'S MOTION TO DISMISS COUNTERCLAIMS

This cause is before the Court on the Defendants' motion to dismiss, or alternatively to strike, Plaintiff's claims against the Indiana Masonic Home, Inc.'s Board of Directors ("Board of Directors") and its individual members (Dkt. No. 23) and Wendel's motion to dismiss Indiana Masonic Home, Inc.'s ("Masonic Home") counterclaims for lack of jurisdiction (Dkt. No. 30). Both motions are fully briefed, and the Court, being duly advised, **GRANTS** the Defendants' motion and **DENIES** Wendel's motion, for the reasons and to the extent set forth below.

## I. DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY TO STRIKE, PLAINTIFF'S CLAIMS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Defendants move to dismiss Wendel's Title VII sex discrimination claim against the Masonic Home's Board of Directors and a state law claim against Rodney Mann alleging tortious interference with Wendel's employment contract. The Defendants argue that, with respect to these claims, Wendel fails to state a claim

for which relief can be granted.  The Defendants do not seek to dismiss Wendel's Title VII sex discrimination claim against Masonic Home, Inc.

As a preliminary matter, the Court addresses Wendel's Title VII sex discrimination claim against the Board of Directors.  In response to the Defendants' motion, Wendel states that she "has no objection to Defendants' motion to strike the Board [of Directors] and its individual members as defendants for her Title VII claim."  Dkt. No. 37 at 1.  Accordingly, the Court dismisses Wendel's Title VII sex discrimination claim against the Board of Directors and its individual members.[1]  Wendel's Title VII sex discrimination claim against Masonic Home, Inc., which is not the subject of the Defendants' current motion, remains pending.

## A.     STANDARD

The Defendants have already answered Wendel's complaint.  Therefore, instead of seeking to dismiss under Rule 12(b)(6) Wendel's claim against Mann for tortious interference with her employment contract, they are seeking judgment on the pleadings under Rule 12(c). *See, e.g.*, *Warzon v. Drew*, 60 F.3d 1234, 1237 (7th Cir. 1995) (citing *Republic Steel Corp. v. Penn. Eng'g Corp.*, 785 F.2d 174, 182 (7th Cir. 1986)).  In reviewing a Rule 12(c) motion, the Court applies the same standard for reviewing a motion to dismiss under Rule 12(b)(6). *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citation omitted). The Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff."  *Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). A claim will survive a Rule 12(c) motion if the pleadings "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (internal quotation

---

[1]  It appears that Wendel intended to name each member of the Board of Directors as a defendant in this case, even though she failed to list them in the caption of her complaint as required by Federal Rule of Civil Procedure 10(a).

omitted).  A complaint's factual allegations are plausible if they "raise a right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).  The Court, however, "need not ignore facts set forth in the [pleadings] that undermine the plaintiff's claim or give weight to unsupported conclusions of law." *Buchanan-Moore*, 570 F.3d at 827 (citation omitted).

## B.    BACKGROUND

The following relevant facts are alleged by Wendel and taken as true for the purposes of Defendants' motion for judgment on the pleadings with respect to Wendel's claim against Mann for tortious interference with her employment contract.[2]

Wendel was hired in April 2013 to serve as the Administrator of the Masonic Home's Nursing Home.  She later applied for and was offered the position of Executive Director/CEO of Masonic Home.  She began working as the Executive Director/CEO on July 16, 2013, while continuing in her role as Administrator.  In September 2014, Ed Fodrea, a paid consultant for Masonic Home, told Wendel that Rodney Mann, President of the Board of Directors, was planning to fire her.  Around October 6, 2014, Mann instructed Wendel not to attend the October 10, 2014, Board of Directors meeting.  Mann informed the Board of Directors that Wendel was seeking other employment outside of Masonic Home; that she had failed to follow his directives, including directives to reduce middle management and hire an outside accounts payable vendor; that she could not be trusted; and that she should be fired.  Mann's statements to the Board of Directors about Wendel were known by Mann to be false.  His statements induced the Board of Directors to vote to terminate Wendel's employment.  During the week of October 13, 2014,

---

[2]  Wendel alleges additional facts that are relevant to her Title VII sex discrimination claim against Masonic Home, but those are not recited here because that claim is not at issue in Defendants' motion.

Wendel started receiving indications that her termination was imminent because another employee had received unsolicited calls asking about the "CEO vacancy," which Wendel knew nothing about.  On October 16, 2014, Fodrea confirmed to Wendel that Mann told him that the Board of Directors was going to terminate her.  On October 21, 2014, Wendel told Fodrea that if Mann was going to terminate her as CEO, she wanted to revert to her former position as Administrator of the nursing home.  He concurred and said that he would discuss her suggestion with Mann.  Mann directed Wendel to meet with him and the Board of Directors' attorneys.  At that meeting on October 22, 2014, Mann terminated Wendel's employment.  He told her that the Board of Directors was terminating her because they had lost faith in her because she was seeking other employment.

## C.    DISCUSSION

Under Indiana law, the elements of tortious interference with a contractual relationship are "(i) the existence of a valid and enforceable contract; (ii) defendant's knowledge of the existence of the contract; (iii) defendant's intentional inducement of the breach of the contract; (iv) the absence of justification; and (v) damages resulting from defendant's wrongful inducement of the breach."  *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994) (citation omitted).[3]  An employment contract can be the subject of a claim for tortious interference where a contract is terminable at will.  *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 285 (Ind. 1991).  "A party cannot 'interfere' with its own contracts," however, so the tort is actionable only when "committed [] by a third party."  *Trail v. Boys &*

---

[3]  Wendel does not bring a claim for tortious interference with a business relationship, which would have readily failed to state a claim given recent Seventh Circuit precedent.  *See Pierce v. Zoetis, Inc.*, No. 15-1900, --- F.3d ----, 2016 WL 1015130, at *6 (7th Cir. Mar. 15, 2016) (affirming dismissal of tortious interference claim where plaintiff relied on defamation to meet illegal act element of claim).

*Girls Clubs of Northwest Ind.*, 845 N.E.2d 130, 138 (Ind. 2006).  Directors or officers acting outside of the scope of their official capacity "act as a third party."  *Id.*  Therefore, Wendel must "allege some interfering act by [Mann] that rests outside [his] authority as agent[] of the corporation."  *Id.* at 139.

Although Wendel does not bring a claim for defamation against Mann, she argues that "Mann tortiously interfered with [her] employment contract with [Masonic] Home by lying to the Board [of Directors] with respect to her employment search outside [Masonic] Home and her poor job performance as Executive Director."  Dkt. No. 37 at 2.  Specifically, Wendel alleges that "Mann informed the Board [of Directors], falsely, that Wendel was seeking other employment outside [Masonic Home], that she had failed to follow his directives, including directives to reduce middle management and hire [sic] outside accounts payable vendor, she could not be trusted, [and] that she should be fired, all of which was false and known by Mann to be false."  Compl. ¶ 34.  She further alleges that, "[b]y his false representations to the Board [of Directors], Mann induced the Board [of Directors] to vote to terminate Wendel's employment contract."  *Id.* at ¶ 35.  She argues that lying is an intentional tort and that "commission of an intentional tort is presumed to be outside the scope of employment."  Dkt. No. 37 at 7 and 4, respectively.  Wendel concludes that "[b]ecause Mann removed himself from the scope of his official duties as Board President by lying, he became a third party who committed a tortious act against [Wendel]."  *Id.* at 8.

The Defendants argue that Wendel has failed to state a cognizable claim for relief against Mann because she failed to allege actions outside of Mann's authority as a board member.  They argue that Mann "possessed the authority to evaluate and make recommendations to the Board [of Directors] regarding its Executive Director's employment" and that Wendel "has not pled

facts that remove Mann from the scope of his Director role." Dkt. No. 41 at 2 and 3, respectively.

The Defendants rely on the Indiana Supreme Court's reasoning in *Trail* to support their position. In *Trail*, the Indiana Supreme Court affirmed the trial court's dismissal of a claim for tortious interference with an at-will employment relationship brought by a former executive director against individual board members. 845 N.E.2d at 141. The plaintiff in that case also brought a claim for defamation. *Id.* at 136. The plaintiff alleged that certain board members, for personal reasons, were unhappy with the plaintiff, so they contrived an evaluation of his work designed to discredit him and justify his termination. *Id.* at 133. Following the evaluation, the board of directors or the executive committee thereof, which had the authority to terminate the plaintiff's employment, either terminated the plaintiff or asked him to resign. *Id.* at 134. The Court opined that "basic corporation law affords the directors authority to engage in the activity at issue. Because Trail has not alleged any fact that overcomes the presumed and implied powers of the directors, we cannot agree with Trail's assertion that the defendants acted outside the scope of their official duties in evaluating his work." *Id.* at 139. It, therefore, affirmed the dismissal of the plaintiff's tortious interference claim, in part, concluding that, "no action can lie against the individual members of [the executive committee] for exercising their rightful authority." *Id.* at 140 (relying on *Martin v. Platt*, 386 N.E.2d 1026, 1027 (Ind. Ct. App. 1979) (affirming summary judgment for defendant employer and individual corporate executives on tortious interference with business relationship claims where individual defendants with authority to fire plaintiffs "intentionally and maliciously caused [the employer] to discharge them")).

This Court finds the reasoning in *Trail* to apply to Wendel's claim.  Like the individual board members in *Trail*, Mann, as president of the Board of Directors, was authorized by basic tenants of Indiana corporation law to "evaluate the executive employees of the enterprise," including Wendel.  *Trail*, 845 N.E.2d at 139 ("incidental authority includes the authority to investigate and evaluate the executive employees of the enterprise").  He also had the incidental authority to share his opinions with other members of the Board of Directors.  Mann, therefore, was acting within his duties as a board member when he shared information with the board. *Kiyose v. Trustees of Ind. Univ.*, 333 N.E.2d 886, 891 (Ind. Ct. App. 1975) ("[L]iability does not accrue for the performance of acts lying within the scope of the agent's duties.").

The fact that Mann is alleged to have knowingly provided false information to the Board of Directors does not remove Mann from acting within his duties.  In *Leslie v. St. Vincent New Hope, Inc.*, the plaintiff brought against her supervisor a claim for tortious interference with an employment contract.  873 F. Supp. 1250, 1251 (S.D. Ind. 1995).  The supervisor's actions were "obviously within the scope of a supervisor's duties," but the plaintiff's theory was that the supervisor's malicious and retaliatory intent "took her actions outside the scope of her employment."  873 F. Supp. at 1255.  Wendel asserts a strikingly similar theory: that "Mann removed himself from the scope of his official duties as Board President by lying."[4]  Dkt. No. 37 at 8.  As the court found in *Leslie*, such a theory "conflicts directly with *Martin v. Platt*, in which the plaintiffs alleged that their supervisors intentionally and maliciously caused plaintiffs to be fired in order to suppress the damaging information they had obtained about the supervisors."  873 F. Supp. at 1255 (citing *Martin*, 386 N.E.2d at 1027).  The *Leslie* court reasoned:

---

[4]  As opined by the court in *Leslie*, Wendel's theory of tortious interference would be a broad expansion of Indiana law.  For a thorough discussion of this issue, *see Leslie*, 873 F. Supp. at 1256-57.

> [B]ecause all the actions Leslie has attributed to [her supervisor] fell within the
> scope of her duties for St. Vincent New Hope, and because [her supervisor]'s
> motives could not affect whether her actions were within the scope of her duties,
> [her supervisor] cannot be liable for tortious interference with Leslie's
> employment.

873 F. Supp. at 1257. The same is true here. Mann's action of providing information to the

Board of Directors falls within the scope of his duties as a board member, and his motives, *i.e.*,

the reasons behind his untruthfulness and his untruthfulness itself, do not affect whether his

actions fell within the scope of his duties. Therefore, Mann cannot be liable for tortious

interference with Wendel's employment contract with Masonic Home.

## II.  WENDEL'S MOTION TO DISMISS INDIANA MASONIC HOME, INC.'S COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Wendel moves to dismiss for lack

of subject matter jurisdiction Defendant Masonic Home's state law counterclaims of unjust

enrichment and conversion.[5] In reviewing a Rule 12(b)(1) motion, the Court must "accept as

true all well-pleaded factual allegations and draw all reasonable inferences in favor of the

[nonmovant]." *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir.

2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)).

The following facts are taken as true for the purposes of Wendel's motion to dismiss

Masonic Home's counterclaims. At Wendel's termination meeting, Masonic Home informed

Wendel that, conditioned on her anticipated execution of a severance agreement, it would begin

making salary continuation payments to her. Counterclaim ¶¶ 7-8. At the time, Wendel did not

---

[5] Masonic Home's conversion counterclaim is entitled "Counter-claim Count II: Civil Conversion," but the allegations suggest that it is bringing a claim under the Indiana Crime Victims Relief Act, Indiana Code § 34-24-3-1, which allows a claimant who has suffered a pecuniary loss as a result of criminal conversion to bring a civil action to recover the loss. *See, e,g.*, *Larson v. Karagan*, 979 N.E.2d 655, 661 (Ind. Ct. App. 2012).

instruct or suggest that Masonic Home not make the payments. *Id.* at 8. Approximately two weeks later, on its next regular pay date, Masonic Home made a conditional salary continuation payment of $3,178.08 to Wendel. *Id.* at ¶ 9. At a point after that payment was made, Wendel declined Masonic Home's proffered severance agreement. *Id.* at ¶ 10. Wendel acknowledges that, around the same time of the payment, "she received correspondence, which she did not read but . . . later learned was a 'pay statement' from [Masonic Home] that delineated $3,178/08 [sic] as 'SVRNC.'" Dkt. No. 31 at 3. "Wendel did not examine [Masonic Home]'s mailing contemporaneously because of her emotional upset at [Masonic Home] for her wrongful termination." *Id.* Instead, she first reviewed the pay statement on October 29, 2015, the date she received notice of Masonic Home's counterclaim. *Id.* Masonic Home never demanded return of the payment and instead filed its counterclaim against Wendel. *Id.* at 4. She retained the $3,178.08 payment. Counterclaim ¶ 11.

Masonic Home argues that its counterclaims are related to Wendel's claims and form part of the same case or controversy, allowing the Court to exercise supplemental jurisdiction over its state law claims. *Id.* at ¶ 5. Wendel contends that this Court lacks supplemental jurisdiction over Masonic Home's counterclaims because they "arise out of a wholly different set of facts than the facts" supporting the claims in Wendel's complaint. Dkt. No. 31 at 6.

The Court agrees with Masonic Home. Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Claims are part of the same case or controversy if they "derive from a common nucleus of operative facts." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (quotation omitted); *see also*

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  "A loose factual connection between the claims is generally sufficient."  *Sanchez & Daniels*, 503 F.3d at 614.

Masonic Home has demonstrated such a connection.  The payment underlying its unjust enrichment and conversion claims against Wendel ultimately stems from Masonic Home's termination of Wendel, the central fact on which Wendel also bases her claims against Masonic Home.  *Cf. Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999) (finding district court properly exercised subject matter jurisdiction over plaintiff's state law claims because they generally "arose out of the same set of facts – those regarding his employment with and termination from [his employer] – as his federal claim").  Therefore, Masonic Home's counterclaim is so related to Wendel's claims that they are part of the same case or controversy.  Accordingly, the Court has subject matter jurisdiction over Masonic Home's counterclaims.

## III.   CONCLUSION

The Defendants' motion for judgment on the pleadings as to Wendel's Title VII claim against the Board of Directors and its individual members and her tortious interference claim against Mann is **GRANTED**.  Those claims are therefore **DISMISSED**.  Because there are no other claims asserted against them, these Defendants are dismissed from this case.  Wendel's motion to dismiss Indiana Masonic Home, Inc.'s counterclaims for lack of subject matter jurisdiction is **DENIED**.  The case shall proceed on Wendel's only remaining claim, her Title VII discrimination claim against Indiana Masonic Home, Inc., and on Indiana Masonic Home, Inc.'s counterclaims against Wendel.

SO ORDERED: 5/2/16

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.

10